[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on December 22, 1973, a total of 25 years. They separated in September of this year. By complaint dated February 10, 1998, the Wife instituted this action claiming a dissolution of marriage, alimony, custody, support, an assignment of the estate of the defendant, security, counsel fees, and other relief. The defendant, who appeared through counsel, did not file an answer or cross-complaint but was heard on all issues over a two day trial.
Two children were born to the Wife, issue of the marriage, to wit: Caitlin Anne, born March 12, 1984 and Julia Grace, born April 22, 1987. To the considerable credit of the parties, they were able to set aside particularly antagonistic feelings towards one another and arrive at a mutually agreeable custody and visitation arrangement. The Husband also had a child by a former marriage who spent time with the parties during his minority but otherwise was not an issue.
The Wife is 50 years of age and has a Bachelor of Arts degree. The Husband, who will be 59 years of age next month, has three degrees, a Bachelor of Science, a Masters of Science, and a Masters of Business Administration, the last obtained during the marriage. Both parties presented themselves as being intelligent and articulate.
For some time, the Wife's health has not been good. In the past she had a radical mastectomy with abdominal reconstruction, CT Page 15636 and recently was diagnosed with third stage ovarian cancer which has spread to other organs. Her condition requires that she take medication, participate in chemotherapy and other painful, debilitating treatments. She also suffers from fibromyalgia. To a large degree, as needed from time to time, she is cared for by family and friends for her various problems. While she is hopeful and demonstrates a great deal of courage, her prognosis is best described as guarded.
The Husband too has serious medical problems. In August of this year he had quintuple by-pass surgery to repair his coronary arteries. He is currently in rehabilitation, takes daily medication, and must monitor his condition by periodic doctors visits. He also suffers from glaucoma eye disease which requires quarterly visits to his physician and Menieres syndrome, an inner ear problem.
At the time of the marriage, neither party had any assets to speak of, although there was some testimony that the Husband had $10,000 in savings and a Corvette automobile which he later sold for $15,000. The Wife, who had no assets, did have an education loan in the amount of $5,000 which was liquidated during the marriage.
As is typical in some marriages, the Wife essentially stayed home with the children while the Husband went off to work. However, before the birth of the children, between September 8, 1970 and June 30, 1984, the Wife was employed by Schenectady County, New York where she earned a pension entitling her an annual allowance of $4,333.87 commencing at age 55 (see Plaintiff's Exhibit C). She also had a number of part time jobs until 1991 when she started work full time. Since 1997 she has been employed as a catalogue manager in a computer warehouse earning approximately $33,000 per year.
The Husband was an engineer throughout the marriage, 25 years with General Electric which he left in 1987 after they offered him early retirement. Thereafter, he worked with AVCO for 5 years until he was laid off in 1992. Since then he has had sporadic employment with several companies including one in the state of Iowa for one year and with Union Carbide for 8 months. He has had no work since March of this year although he claims to have made innumerable efforts to find a suitable position. His salary over the years has ranged from $60,000 to $120,000 per annum. It would be fair to assume that his income capacity is affected by his age CT Page 15637 and serious health problems. Nevertheless the court finds he has the capacity to earn at least $60,000 per annum.
Because of the Husband's employment, the parties lived in three different states, New York, Massachusetts, and Connecticut, and owned 3 different homes. The current residence in Trumbull is on the market for $459,000 and has a minimum fair market value of $425,000. After payment of the first mortgage balance of $54,798.07, real estate commission, and customary closing costs, net proceeds would approximate $350,000. It is the Wife's intention, after the sale, to continue to reside in Trumbull where the children are enrolled in school and doing well.
Other than the Husband's GE pension, $16,741.56 per year commencing at age 60 (see Plaintiff's Exhibit D) and his AVCO pension (amount never disclosed), the only other significant assets were the Husband's IRA accounts which on July 31, 1998 showed the following balances: Merrill Lynch $222,608.27 (see Plaintiff's Exhibit M), Paine Webber $288,029.97 see Plaintiff's Exhibit N), and A.G. Edwards $178,799.06 (see Plaintiff's Exhibit O) for a grand total of $689,437.30. More current balances were not available to the court. The Husband was not forthcoming about these retirement assets, disclosure of which had to be dragged out of him. The pension assets were only revealed at the start of the trial and were never shown on his financial affidavit. The substantial IRA assets were not disclosed at all, during formal discovery, on his financial affidavit filed at trial, or in direct examination of the Husband by the Wife's attorney. But for the 11th hour testimony of a bank officer, the assets would have never been discovered. It is clear that the Husband lied and in so doing, deceived his attorney, his wife, and the court. So egregious was the Husband's conduct that the court felt compelled to order a copy of the transcript of his testimony sent to the State's Attorney for a perjury investigation.
 "A court is entitled to rely upon the truth and accuracy of the sworn statements required by . . . the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. Casanova v. Casanova, 166 Conn. 304, 305, 348 A.2d 668 (1974)."
The parties enjoyed a station in life commensurate with their ages, education, and incomes. Their relative contributions to the acquisition, appreciation, and preservation of value of the CT Page 15638 accumulated assets, the Husband's secretiveness notwithstanding, would appear to be reasonably equal. Neither party has substantial liabilities. Given their current circumstances, it is unlikely that either party will be able to accumulate substantially more than the other by way of assets and income in the future.
It would serve no useful purpose to chronicle the causes for the breakdown of the marriage which is clearly irretrievable. Except for brief periods, it was not a happy relationship. The Wife claimed that the Husband was physically abusive, secretive about money, didn't like her family, initially didn't want children, was verbally abusive, unreasonably jealous, and other such complaints. The Husband claimed that the Wife stayed out late, was having an affair, contracted herpes, was verbally abusive, unresponsive to his needs, and other such complaints. Suffice it to say, the Wife's position was much more credible. It is significant to note that despite their physical, marital, and financial problems, both parties are romantically involved with third parties at the present time.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
The marriage is dissolved on the grounds of an irretrievable breakdown.
Custody and Visitation
The parties shall have joint legal custody of the minor children with the Wife having sole physical custody. The agreement of the parties dated December 8, 1998 was reviewed by the court, is found to be in the best interests of the minor children, and is incorporated herein by reference.
Child Support
The Husband shall pay to the Wife child support in the amount CT Page 15639 of $260 per week which comports with the Child Support Guidelines. Child support shall continue until a child shall attain the age of 18 years, unless said child is still enrolled in high school, whereupon it shall continue until graduation, but in no event beyond a child's nineteenth (19th) birthday. The Husband shall notify the Wife in writing, within 48 hours of his becoming employed, including his anticipated weekly wage and deductions therefrom, in order for her to determine whether a modification of child support or alimony is warranted.
Alimony
The Husband shall pay to the Wife alimony of one dollar per year until the death of either party, the Wife's remarriage or cohabitation as defined in Conn. Gen. Stat. Sec. 46b-86.
Life Insurance
In the event the Husband becomes employed and life insurance is available to him as an incidence of his employment, he shall name the Wife beneficiary until he no longer has any financial obligation to her under this decree. Upon reasonable request, the Husband shall furnish the Wife with satisfactory evidence that he is in compliance. This order shall be subject to future modification by either party.
The Wife shall name the minor children beneficiary on her group life insurance in the face amount of $124,419.
Medical Insurance
The Wife shall maintain the medical insurance she now has in force through her place of employment for the benefit of the minor children. In the event it is no longer available to her, or the cost becomes unreasonable, the issue shall be subject to modification by the court. All un-reimbursed medical and dental expenses shall be equally shared by the parties.
Real Estate
The Husband shall immediately quit-claim to the Wife his interest in the marital residence located at 70 Puritan Road, Trumbull, Connecticut subject to the outstanding mortgage which the Wife shall assume and be solely responsible. The monthly payment on the mortgage for November and December shall be the CT Page 15640 Husband's sole responsibility. He may use the insurance refund check in his possession for that purpose. The Husband shall immediately vacate the premises but he shall have until January 31, 1999 to remove his personal belongings and the items of personal property awarded to him pursuant to the next paragraph.
Personal Property
All of the furniture and furnishings located in the marital residence shall be equitably divided between the parties (it would have been better if the parties had presented their claims regarding personal property at the time of trial). If they are unable to effectuate such a division, the matter is referred to the Family Services Unit of the court for mediation. In the event mediation is unsuccessful, either party may file a motion with the court for final determination. No items are to be removed or disposed by either party except by written agreement or further order of the court. If no motion is filed by January 31, the property shall belong to the wife.
The Husband shall retain the 1989 Honda and the Wife the 1993 Dodge automobiles.
The Husband shall retain his Webster checking/savings account and the cash in his possession in the approximate amount of $7,000. The Wife shall retain her Chase Bank checking account in the approximate amount of $872.43 and the Kennebunk Savings Bank money market account in the approximate amount of $2,554.82.
Children's Assets
The Husband shall continue to manage the assets belonging to the children (reported to be approximately $45,000), whether under the Uniform Gifts to Minors Act or otherwise, which are in his control. Likewise, the Wife shall continue to manage such assets that are in her control. Annually, each party is to give a written documentation to the other concerning the status of such assets.
Retirement Assets
The Husband shall retain his General Electric and AVCO pensions without claim from the Wife. The Wife shall retain her New York State pension without claim from the Husband. CT Page 15641
The Wife shall retain her Chase IRA in the approximate amount of $5,922.19 and her Fleet IRA in the approximate amount of $5,722.68.
The IRA assets of the Husband, totaling approximately $689,437.30 as of July 31, 1998, and now on deposit with Merrill Lynch, Paine Webber, and A.G. Edwards, shall immediately be divided equally between the parties. Said division to be accomplished pursuant to a rollover or Qualified Domestic Relations Order in order to avoid tax consequences to either party. The processing of the transfer shall be the responsibility of the Husband. Until the transfer is accomplished, the court will retain jurisdiction.
Liabilities
Each party shall be responsible for their own liabilities.
Counsel Fees
The Husband shall pay to the Wife counsel fees of $15,345.70 within 60 days from date.
Taxes
By April 15 of each year, until there is no longer any financial obligation for child support or alimony, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then existing.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein. Plaintiff's counsel is to prepare the judgement file, have it certified by defendant's counsel, and file it with the court within 30 days.
CUTSUMPAS, J.